A91A2132. BANNISTER v. THE STATE.
(415 SE2d 912)

BIRDSONG, Presiding Judge.

Charles Bannister appeals his judgment of conviction of sale of cocaine and sentence. He enumerates three errors. *Held*:

1. Appellant asserts the trial court erred by not holding an in camera inspection to determine the materiality of the confidential informant and by failing to reveal the identification of the informant. Pretermitting the question of in camera inspection is the question of whether the operative facts of this case show without the benefit of such inspection that the identification of the informant need not be revealed.

(a) Appellant timely filed a motion for in camera examination to determine materiality of the confidential informant and disclosure of the confidential informant. This motion inter alia asserts that "defendant believes the informant(s) may have seen or possess exculpatory information"; "defendant believes the testimony of the informant(s) is relevant and would aid in defendant's defense"; and, "defendant further relies on *United States v. Roviaro*, 353 U. S. 53 [77 SC 623, 1 LE2d 639] and *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511)." Appellant also filed a timely motion to produce in which he moved inter alia to obtain access to or copies of "any and all evidence . . . which would tend either to negate [his] alleged guilt . . . as to the offenses charged, or which would tend to reduce the punishment. . . ." The substance or function of these motions, which is controlling over nomenclature (*State v. Allen*, 192 Ga. App. 730, 734 (386 SE2d 394)), is to incorporate a *Brady* motion into the motion for in camera inspection and confidential informant identification disclosure. In *Thornton v. State*, 238 Ga. 160 (231 SE2d 729), cert. den. 434 U. S. 1073, "the disclosure was being sought pursuant to a *Brady* motion. In disposing of the issue, the Supreme Court first distinguished between a 'decoy' or 'informer-participant' (a person used to obtain evidence), and 'informer-witness' (a person used to establish facts upon which to base a prosecution), and a 'mere tipster' (one who provides information about criminal activity). [Cit.] After noting that both *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) and

*Roviaro* had a common basis of 'fundamental fairness to the accused,' the court concluded that they must be read together where the question is disclosure of the identity of an informer-witness or informer-participant 'if material to the defense on the issue of guilt or punishment.' [Cit.] If such an informer's identity is required to be disclosed under *Brady*, the trial court should then apply the *Roviaro* balancing test. [Cit.]" *Moore*, supra at 389, citing extensively *Thornton*, supra. The *Roviaro* balancing test as restated for clarity in *Thornton*, supra at 164 provides "that the due process concept of fundamental fairness require[s] that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself." The court may consider any factor operative in the particular case before it which is relevant to the application of this balancing test, and all relevant evidence contained in any pretrial, trial and post-trial proceedings. *Walton v. State*, 194 Ga. App. 490, 491 (1) (390 SE2d 896) (can consider factor that a witness cannot reasonably be expected to appear in court and incriminate himself).

(b) In this case, the trial court initially ordered the State to have the confidential informant present for an in camera proceedings to determine the materiality of his testimony; however, the witness did not appear as scheduled. The trial court promptly conducted a full pretrial hearing during which law enforcement officials testified that they had made various attempts to contact the confidential informant but his whereabouts was unknown, and that he was believed to have left the area as a warrant for probation violation had been issued and was outstanding. The officers also testified that if the outstanding warrant problem could be solved the highly reliable informant was expected to continue to work for them so that it was necessary in their view to continue to protect his identity. The trial court denied appellant's motion for a continuance to attempt to locate the informant and the case proceeded to trial. At trial the undercover officer testified that appellant sold him the cocaine. The officer further testified to his prior photographic line-up identification of appellant and made an in-court identification as well. Appellant asserts that the informant was the sole person who could support his defense of misidentification. Appellant argues that this defense was reasonably raised by attacking the validity of the undercover officer's identification of appellant as the person who had sold the cocaine during cross-examination of State's witnesses. Appellant did not testify in his own behalf and called no defense witnesses. After trial, a hearing was held on appellant's motion for new trial. At this hearing the trial court expressed its concern as to the sufficiency of the procedure used and stated it was prepared to hold the record open until he found out the identity of the confidential informant, "where he was and if he's in

town, what happened and why he wasn't here." The State indicated it could provide this information if the court will hold the record open. The record does not reveal, as observed by the trial court, that the State engaged in any improper conduct regarding the appearance of the informant. (Nor do we find that the record reflects any improper conduct on the part of the police; rather the record uncontrovertedly reflects that notification of the informant of the outstanding warrant occurred one day before the detective was requested to produce the informant for the hearing.) Thereafter, the trial court modified its position at the motion for new trial hearing by stating it would just like the record to reflect why the informant decided to leave when he did "if not necessarily the name of the C. I." The record was not further supplemented.

As the record reflects that the confidential informant failed to appear for an in camera hearing through no fault of either the State or appellant, we elect in the interest of fundamental fairness to accept for purposes of this appeal that the testimony of the informant would have been material under *Brady* thereby requiring application of the *Roviaro* balancing test so as to weigh, using the above-discussed test, "the materiality *of the informer's identity* to the defense against the state's privilege not to disclose his name under *Roviaro*." (Emphasis supplied.) *Thornton*, supra at 165 (2). Further, by conceding for purposes of this appeal that the informant's testimony would meet the *Brady* materiality test, the issue of denial of an in camera hearing to establish this materiality issue is rendered *moot*.

We recognize that "[i]n most instances, where the information is material under *Brady*, it will also be required under *Roviaro*. But this may not always be so and to do otherwise is to abrogate entirely the state's privilege whenever a *Brady* issue is successfully raised by the defendant." *Thornton*, supra. Thus, it becomes essential to preserve the distinction between *Brady* and *Roviaro* requirements.

"One of the factors important in [applying the *Roviaro* balancing test] will be the type of informer involved." *Thornton*, supra at 165. The confidential informant was neither a "mere tipster" nor a "decoy" who acted to consummate the sale in lieu of the police. Neither, in the attendant circumstances, was he just an "informer-witness," who was used only to introduce the officer to appellant and who thereafter remained passively present at the crime scene a mere witness to that which occurred. Rather the uncontroverted testimony by the police detective monitoring the radio transmissions of the incident establishes that informant actively participated in the sale to the extent that, at some point in time before the sale, he verbally requested the seller give them a 50, that is a $50 piece of cocaine. Accordingly, the informer was an "informer-participant" within the meaning of *Thornton*, as by his conduct, albeit slight, he actively as-

sisted the undercover officer in soliciting the sale for purposes of obtaining evidence. *Thornton*, supra at 163. Thus on a spectrum, the informer's conduct would fall somewhere between that of an "informer-witness" and that of a true "decoy."

The factors favoring disclosure of identity include the *concession* that the evidence would have met the *Brady* materiality test; the informant technically qualifies as an "informer-participant" rather than a "mere tipster" or an "informer-witness"; the informer is not currently assisting the police by providing timely drug intelligence by virtue of his absence; besides the undercover agent and the seller, the informer was the only other witness who actually witnessed the physical transfer of the cocaine and money in consummation of the drug sale; the informant was physically present during and witnessed the entire incident; appellant cross-examined the State's witnesses in an attempt to destroy their credibility regarding appellant's identification as the seller; and the trial judge charged the court on identification. The factors favoring nondisclosure include that the testimony of the undercover agent was corroborated in many material respects, and in no material way was impeached by the pretrial hearing or trial testimony of the officer who monitored the radio transmissions of the sale. The monitoring agent overheard the informant introduce the seller to the undercover agent as "Charles." Appellant's name is "Charles Bannister." Although the monitoring agent did not hear anything after the seller was asked if he had a "20," he subsequently provided a description of the seller to the monitoring officer which matched the appearance of appellant. The monitoring officer had seen appellant numerous times before, including at the location where the sale occurred. Thus, the totality of the monitoring officer's testimony also corroborated, albeit circumstantially, the testimony of the undercover agent that it was appellant who had sold the cocaine for $20. As a result, it is in essence only as to the circumstances surrounding the actual physical transfer of money and drugs that the informer would have been the sole witness in a position to amplify on or refute the testimony of the undercover officer. Appellant elected voluntarily not to testify at trial and called no witnesses in his behalf. Accordingly, the testimony of the informer could *not* amplify or refute the testimony of the accused or of any defense witness — there being none. Therefore, unlike the situation in *Moore*, supra, the informer is not " 'the only witness in a position to amplify or contradict the testimony' of the appellant *and* the police officer." (Emphasis supplied.) *Moore*, supra at 391. In fact the informer cannot in this instance amplify or contradict the testimony of the appellant at all, and the monitoring officer in fact "amplified" upon, through direct and circumstantial testimony, the testimony of the undercover officer, except as to those limited circumstances above discussed. Although at this

point the interests of the State are very high, nevertheless if these were the only relevant factors operative in this case, we would be compelled by considerations of fundamental fairness to conclude that the results of the balancing test slightly favor disclosure of the identity of this *"informer-participant." However, there exists a pivotal factor in this case which causes the scales to weigh in final analysis in favor of nondisclosure.* Although the concerns of the trial judge were well-founded that the evidence adduced at the hearing might not be thorough enough standing alone to support a genuine finding of fact that the informant was beyond the jurisdiction of the court, this issue must in this instance be resolved against appellant. It is well-established that a party to a trial may make admissions in judicio in their pleadings, motions, and briefs. *Brownlow v. City of Calhoun*, 198 Ga. App. 710, 711 (402 SE2d 788); *Time Ins. Co. v. Lamar*, 195 Ga. App. 452 (2) (393 SE2d 734); *Summerlot v. Crain-Daly Volkswagen*, 138 Ga. App. 839 (227 SE2d 463). When an admission is so made "it is a solemn admission in judicio. As such, it is binding upon the party and estops the party from denying the admission or introducing any evidence to controvert the admission, even if it is untrue." Green, Ga. Law of Evid. (3rd ed.), Admissions, § 233. The record establishes that in his motion for continuance, appellant made the following factual admissions in judicio: "The in camera examination was not able to be conducted due to the *Confidential Informant absencing himself from the jurisdiction of the Court.* At this time *no one* is able to locate the Confidential Informant." (Emphasis supplied.) A reasonable inference which can be drawn either from these admissions or independently from the testimony of the police at the pretrial hearing and at trial is that no one knows when or if the confidential informant will place himself within the jurisdiction of the court or make his whereabouts known. In fact, at trial in response to a question by appellant's counsel, the monitoring officer testified affirmatively that the confidential informant right now is on the lam; he is on the run. When the factor of the informant's absence from the jurisdiction and unknown whereabouts is considered in addition to and with all other relevant factors and evidence, the result of the *Roviaro* balancing test in this instance is to favor the government's privilege of *nondisclosure.* Accordingly, we find that this enumeration of error is without merit.

*Sowers v. State*, 194 Ga. App. 205 (390 SE2d 110); *Jones v. State*, 192 Ga. App. 186 (384 SE2d 273); and *Moore*, supra, relied upon by appellant, are factually distinguishable from this case.

2. The decision whether to grant a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's rights to a fair trial. *King v. State*, 261 Ga. 534, 535 (2) (407 SE2d 733). We are satisfied

from the posture of the record that the trial court did not abuse its discretion in refusing to grant defendant's motion for mistrial where the bailiff threw a napkin at a person allegedly a member of the appellant's family and yelled at her when she did not rise rapidly enough at the bailiff's call. The record does not establish conclusively that the jury in fact saw or heard the incident, or that if they did they were aware that the lady was a member of appellant's family. Appellant counsel's professed belief that this particular incident was seen by the jury is insufficient to establish an abuse of discretion. Assuming arguendo the incident was seen and the jury was aware of the lady's relationship to the accused this would not mandate a mistrial per se. Moreover, although no cautionary instruction was given none was timely requested. This enumeration is without merit.

3. Appellant asserts the trial court erred in denying its motion for directed verdict as the evidence was insufficient to authorize a verdict of guilty. The proper test when the sufficiency of the evidence is challenged by a motion for directed verdict of acquittal is the "reasonable doubt" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436); *Wilburn v. State*, 199 Ga. App. 667 (1) (405 SE2d 889). Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offense charged. *Jackson v. Virginia*, supra.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

## On Motion for Reconsideration.

Appellant asserts that this court reached its decision to affirm based on two separate distinct reasons. However, the opinion on its face reflects the balancing test applied on appellate review and the numerous factors, weighing on both sides of the issue, that were considered by this court.

As stated in the opinion and as restated here for emphasis, during appellate review, this court may consider any factor in the case that is relevant to the application of the balancing test whether found in the pretrial, trial or post-trial proceedings of the case. *Walton v. State*, 194 Ga. App. 490, 491 (390 SE2d 896). And, we will not reverse the correct ruling of the trial court regardless of the reason given therefor. *Ely v. State*, 192 Ga. App. 203 (4) (384 SE2d 268); *Tony v. Pollard*, 248 Ga. 86 (1) (281 SE2d 557).

Appellant ingenuously argues that, had the informant's name been released, he could have obtained informant's criminal record pursuant to OCGA § 35-3-34, and used that information in cross-examination of State's witnesses. However, the informant was not a

State's witness, and the appellant has *not* made any effort to show the relevance of informant's criminal record (even assuming the existence of prior felony, drug-related, convictions of informant) during the cross-examination of the actual witnesses called by the State. It is not readily apparent how the prior criminal record of an informant would be relevant in the cross-examination of the State's witnesses; for example, the record does not readily disclose that the question of the prior reliability of the informant was a contested issue in this case. Appellant has failed not only to demonstrate error, but also to demonstrate how he has been harmed merely by not having access to any criminal record of the informant. See *Shorter v. State*, 193 Ga. App. 217, 218 (3) (387 SE2d 427); cf. *Dixon v. State*, 144 Ga. App. 27, 28 (1) (240 SE2d 302).

Appellant asserts that had the informant's identity been revealed there is a probability that appellant or his counsel would have been able to locate him and "use his testimony to *impeach* the testimony of the undercover agent." (Emphasis supplied.) However, in addition to the speculativeness of appellant's assertion regarding his ability to locate the informant, where the evidence sought from the unidentified source is required by the defendant on the mere possibility that the police might be impeached it is not enough to demand disclosure of the informant's identity. *Connally v. State*, 237 Ga. 203, 208 (227 SE2d 352); *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511); *Gilmore v. State*, 168 Ga. App. 76, 77 (308 SE2d 232).

Reapplying the balancing test, we adhere to our opinion.
*Motion for reconsideration denied.*

DECIDED JANUARY 29, 1992 —
RECONSIDERATION DENIED FEBRUARY 11, 1992 —

*Sonya J. Calhoun*, for appellant.
*Edward D. Lukemire*, District Attorney, *P. Dee Brophy*, Assistant District Attorney, for appellee.

